**STONER et al. v. NATIONAL METROPOL-ITAN BANK OF WASHINGTON et al.**

**Civ. A. No. 34485.**

District Court of the United States for the District of Columbia.

May 6, 1947.

See also 77 F.Supp. 699.

Prentice E. Edrington, Washington, D. C., for plaintiffs.

Louis M. Denit, Washington, D. C., for defendants.

REEVES, District Judge.

This is an action by the residuary legatees of Christina Buchholz, deceased, to recover the sum of $119,000 for the estate of their decedent from the estate of Frederick W. Buchholz, deceased, and which sum it is averred properly belongs to the estate of Christina Buchholz and to them as residuary legatees. The executor under the last will of Christina Buchholz declined to join in the proceeding and was made a defendant by the plaintiffs. The suit is based upon the following facts:

On August 15, 1941 Christina Buchholz was the owner in fee simple of a parcel of land of approximately ten acres in the State of Virginia. It was commonly known as Occidental Farms. On that date she made an absolute conveyance of such land to her only child, her son, Frederick W. Buchholz, an adult. The grantee, Frederick W. Buchholz, in turn, executed the following codicil to his will:

"I, Frederick W. Buchholz, of the City of Washington, District of Columbia, do make, publish and declare the following to be a codicil to my last will and testament, bearing date the 17th day of April, 1941:

"My mother, Christina Buchholz, having this day, by deed dated and acknowledged this 15th day of August, 1941, before R. S. Harrington, a Notary Public for the Dis-

trict of Columbia, given and conveyed to me certain real estate therein particularly described and situate in Arlington County, Virginia, consisting of approximately ten (10) acres in area, and it being a condition of said gift that said real estate shall revert to my mother in the event she survives me, now, therefore, in performance of said condition, I give and devise said real estate, so conveyed by my mother to me, absolutely and in fee simple, unto my mother, Christina Buchholz, if she shall survive me, but if not, then said real estate shall become part of my residuary estate under my said will.

"IN ALL RESPECTS, except as hereinbefore expressly stated, I hereby ratify and confirm my last will and testament aforesaid.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 15th day of August, 1941.

"/s/ Frederick W. Buchholz (Seal)"

In April following the government appropriated this land for defense purposes and Frederick W. Buchholz was awarded $119,000 for the land so conveyed to him. Frederick died on November 21, 1944. Christina survived until January 15, 1945. The codicil above mentioned was not in the will of Frederick admitted to probate and no provision was made similar to that of the codicil executed on August 15, 1941. The executors proceeded to administer the estate of Frederick and have denied the validity of the claim interposed by the plaintiffs.

In this action several defenses are raised, the chief of which is, that if a valid contract was ever made by Frederick in favor of his mother as evidenced by the codicil of his then-will, same was rescinded by mutual agreement and arrangements between Christina and Frederick and that a valuable consideration was given by Frederick for the release.

The facts as gleaned from practically undisputed testimony disclosed that when the property involved was appropriated by the government the home of Christina Buchholz was in like manner appropriated. This left her "upset" and in distress of mind. Immediately Frederick not only undertook to secure as large an award as he could for both his property and that of his mother, but at the same time to provide another home for his mother. There was much conversation and an extensive search for a satisfactory place for Christina to reside. It became a pressing problem for both mother and son.

One of the witnesses for the defendants, who was a business agent for both mother and son, testified that the mother said that if Frederick would provide a home for her she would not be interested in the proceeds of the condemnation. At the same time this witness said that the mother never knew of the provisions embodied in Frederick's will executed on August 15, 1941, and that there was no agreement of the kind mentioned in said codicil.

There was much testimony from many witnesses that, during the years following the condemnation proceeding and until the death of Frederick, the mother was constantly asserting a claim with respect to the proceeds of the award made in the condemnation proceeding. The evidence on the claimed rescission of the agreement as appeared in the codicil was fragmentary, and in no instance did it disclose a full, free and fair discussion between Frederick and his mother of the agreement to retransfer by will in the event the mother survived him. Because of the death of the mother and son much testimony was offered of statements and conversations had by and between them and statements made sporadically from time to time by each of them to friends and other persons concerning their intentions. This testimony was competent, though in some instances received subject to objections. It indicated the intentions of the parties. Their conversations and expressions should be treated in law as verbal acts as disclosing to the court whether there was in fact a contract rescinding the agreement established by the codicil.

It seems important in the decision of the case to determine in the first instance what the obligations created by the contract of August 15, 1941 were and what rights were created by it.

1. Since Frederick received an absolute conveyance to the property it became his property for all practical purposes and

his title thereto could only be defeated by his demise before that of his mother. This was a contingency upon which the agreement was based. From the testimony not deemed important, the property was conveyed to Frederick for the purpose of enabling him to construct apartment houses and thus greatly enhance the value of the property.

■ If Frederick had retained title to the real estate, then, upon his death, the entire interest would have reverted to his mother and thereby become subject to a devise by her, or, if she died intestate, the property would have descended to her heirs. Moreover, if Frederick had failed to carry out the terms of the agreement by making due provision in his will, the mother nevertheless could have enforced the agreement against his estate on the theory of an equitable conversion. It is unnecessary to cite authorities to support this proposition. They are legion.

■■ When the government appropriated the property and put its value in a liquid form the obligation of Frederick was not discharged nor the rights of the mother extinguished. This was a change by operation of law over which neither of the parties had any control. The terms of their agreement would operate just as forcefully and effectively against the proceeds of the award as it would have operated against the real estate and for all purposes the law would treat the proceeds as real estate. Until Frederick died he was entitled to the use and benefit of the proceeds of the award. He was not charged with the responsibility of segregating the proceeds of the award and holding them in trust for his mother. His title to the proceeds was only liable to be defeated upon the happening of the contingency named in the agreement, that is, if he should predecease his mother. It was his duty to make provision in his will to bequeath to his mother the proceeds of the award. His failure to do this, as in the case of real estate, could not defeat her claim, but, on the contrary, under the law she could have enforced her claim against his estate.

■ 2. It was clearly within the right of the parties to rescind the agreement evidenced by the codicil to Frederick's will. The contention that this was done at the time a new home was provided for Christina is not supported by a preponderance of the testimony. In fact there was no substantial evidence to support the contention. The chief witness for the defendants said that, at the time the new home was arranged for, the mother said she was not interested in the proceeds of the award. This witness said there was no such agreement as shown in the codicil of August 15, 1941, and that Christina did not even know of the codicil. This did not amount to a rescission of the contract for the reason that the son was entitled under the agreement to keep the proceeds of the award. His right to the proceeds could be defeated only upon the happening of the sole contingency that he should die before his mother. He had a right to suppose, and both he and his mother believed, that he would survive her. This was reasonable as in the course of nature he should have done so.

Many witnesses, including the nurse, detailed conversations with Christina both before and after the death of Frederick. These indicated clearly that she did not have an understanding that she had relinquished her right to have the award given to her by the will of Frederick or paid out of his estate.

Since there was no rescission of the contract the plaintiffs would be entitled to have the residue of the award in the hands of Frederick's executors transferred to the estate of Christina Buchholz. This necessarily raises the question as to whether the entire $119,000 should be transferred, or what credits, if any, should be allowed to Frederick's estate.

■ When the government began its condemnation proceeding it was the duty of Frederick to protect the property against an unfair or inadequate award. He was not a practicing lawyer, but the operator of a hotel. He employed counsel as was his duty. The evidence was conclusive that he paid counsel the sum of $29,000 and that through the efforts of counsel the award was very greatly increased. There was some evidence that this payment was both

for the property taken from the mother as well as the property taken from the son. Whether for the son's interest or for both that of the mother and son, it was paid by Frederick and was paid either to protect his own property or both on his behalf and that of his mother. In any event he would be entitled to credit.

In purchasing another home for his mother Frederick paid approximately $34,000. However, he took to himself a remainder after giving the mother a life estate. He was not bound to invest the proceeds of the award on behalf of his mother. Both of them apparently were confused as to what his obligations were and as to what her rights may have been. The life estate for the mother had and has an easily ascertainable value. She was 65 years old at the time. According to all of the tables of mortality it would be a simple matter to compute the value of the life estate. Its value was not limited by the fact that she survived only a few years and that Frederick's estate sold the property for the amount paid is of no importance. Her life estate, according to computation, would be from $12,680.05 upon an aggregate value of $34,000. When this computation is made Frederick's estate should be given credit for the value of a life estate at age 65. There was evidence that Frederick paid considerable sums in improving the property and decorating it for the occupancy of his mother. These improvements were not such as might be designated as capital improvements but were beneficial only to the mother as a life tenant. Had she survived, according to the expectancy of the mortality tables, the benefits of such improvements would have served her and in no wise could have been beneficial to the remainderman. Frederick, in addition to this, paid taxes on the property for which his estate should have credit. The defendants are entitled to no credit for the taxes paid on the property conveyed to Frederick but solely for expenses incurred in the condemnation proceeding, for the life estate of the mother in the residence bought for her, and such expenses as may have been incurred appertaining solely to the home bought for Christina.

■ 3. It is contended that Christina, after the death of Frederick, waived her right to enforce a claim against Frederick's estate and that this waiver would operate against the present claimants. Neither estoppel nor waiver could well be invoked against Christina. According to the evidence the will of Frederick was presented to her on December 11, 1944. This was 35 days before her death. She was quite ill at the time and was and had been attended by a nurse. She was shocked and distressed over the death of her son, an only child. The inference is justified that the pale boatman even then neared her shores. She was not an heir of her son, and, though familiar with his will, under all the tragic circumstances mentioned, it would be the height of injustice to hold that she waived her rights or that the present claimants should be estopped to assert them.

■ The defendants have suffered no inconvenience nor change of position by reason of any act of Christina. It may be added that she, as well as Frederick, was nonplussed and confused as to what her rights were and what Frederick's obligations were. Even lawyers could easily be confused over the unusual situation presented by the facts in this case. It is doubtful if any precedents may be found to shed light on the rights of the parties under facts as here presented. The claim is not barred by limitation as it did not mature till Frederick's will was admitted to probate late in the year 1944.

In view of the foregoing, the decree of the court should be for the plaintiffs for the amounts to be ascertained as above stated. Counsel for plaintiffs will prepare an appropriate decree and submit same to adversary counsel for approval as to form only.

### Findings of Fact.

1. On August 15, 1941 Christina Buchholz conveyed to Frederick W. Buchholz by an absolute deed the 9.899 acres mentioned in the evidence. On the same date Frederick W. Buchholz signed a codicil to his then-will containing the following pertinent recitals:

"My mother * * * having this day * * * given and conveyed to me certain

real estate * * * and it being a condition of said gift that said real estate shall revert to my mother in the event she survives me, now, therefore, in performance of said condition, I give and devise said real estate so conveyed by my mother to me, absolutely and in fee simple, unto my mother, Christina Buchholz, if she shall survive me, but if not, then said real estate shall become part of my residuary estate under my said will."

2. In April, 1942, this identical parcel of land was appropriated by the government under the law of eminent domain for its war or defense purposes. The gross award made to Frederick W. Buchholz was $119,000.

3. On November 21, 1944 Frederick W. Buchholz died and his will was admitted to probate in the following month. In the will thus probated no provision was made with respect to the transfer of August 15, 1941, and no reference was made to the codicil then executed by him.

4. Christina Buchholz survived until the 15th day of January, 1945. Between the date of the death of Frederick W. Buchholz on November 21, 1944 and Christina's death on January 15, 1945 no claim was filed by Christina against the estate of Frederick W. Buchholz.

5. When the land in question was appropriated by the government the home of Christina and its appurtenances were appropriated at the same time. This left Christina Buchholz in great distress of mind, and Frederick W. Buchholz undertook to procure another home for her. He did this by purchasing a residence property and causing the deed to be so drawn that it conveyed a life estate to Christina and the remainder to himself.

6. In the conversations between Christina and Frederick after the appropriation of the property mentioned and her home, Christina told Frederick that if he would purchase a home for her he could retain the money as she was not then interested in the proceeds of the award. Following this, however, she never ceased to claim the proceeds of the award as provided in the agreement. In like manner Frederick never denied or disavowed his obligation entered into on August 15, 1941. The matter was discussed many times between them and statements were made on other occasions to friends and relatives relating to the proceeds of the award. All of these statements and expressions, whether between Christina and Frederick, or separately, served to negative any suggestion that the contract of August 15, 1941 had been rescinded.

7. Both Christina and Frederick were confused with respect to their rights and obligations after the appropriation of the land by the government. There were expressions which indicated that they were doubtful whether the obligations of August 15, 1941 had been matured by such appropriation.

8. Christina Buchholz was the mother of Frederick W. Buchholz, and he was her only child. Whatever irritations and petty differences between them as disclosed by the evidence may have occurred or arisen, the fact remained that their relations were affectionate and each was solicitous of the welfare of the other. Their business relationship was close and confidential. They did not do business at arm's length. According to all of the testimony Christina desired that her son should not only have the real estate but in like manner the proceeds, subject only to the sole condition that if he predeceased her the proceeds would revert to her. She believed, and he believed, that he would outlive her. Accordingly, whatever was said and done was upon the hypothesis that she would die first. She did not by word or deed give up the right that would accrue to her if she survived Frederick. On the other hand, Frederick did not claim or understand that, if he died first, his obligation to reconvey had been rescinded.

9. When Frederick died Christina was and had been seriously ill. She suffered acutely, not only from her own physical ailments, but from mental distress occasioned by the premature death of her son. She apparently was not advised of her rights, nor did she understand what her rights were, or what she should have

done with respect to the obligations of Frederick to her as evidenced by the codicil to his will of August 15, 1941.

10. Frederick W. Büchholz made certain advancements to his mother in his lifetime, and such advancements were made out of the proceeds of the award. For instance, he gave her a life estate in a home that cost $34,000; her age then being 65 years. He paid taxes on said property and caused it to be painted and decorated and certain alterations made, all for the benefit and comfort of his mother. These expenditures were made out of the proceeds of the award. Moreover, he paid $29,000 as attorney's fees for services in connection with the award. His estate is entitled to credit for this amount.

### Conclusions of Law.

1. The codicil to the will of Frederick W. Buchholz was conclusive evidence of the agreement mentioned therein by him and Christina and of his obligation with respect to the disposition of the proceeds of the award in the event of his death before that of Christina. The evidence of such agreement was clear, cogent and beyond a reasonable doubt.

2. The agreement of August 15, 1941 was not rescinded by any contract or agreement, express or implied, between Christina and Frederick. Since Frederick died first, it became a binding and subsisting obligation of his estate and plaintiffs are entitled to the relief as hereinbefore stated.

3. No responsible act of Christina Buchholz waived the obligation of Frederick's estate to her under said agreement and the plaintiffs are not estopped to assert their claims.

4. The proceeds of the award would accrue to the estate of Christina Buchholz and to the benefit of her residuary legatees. The plaintiffs being such, they became and are entitled to maintain this suit since the executor of the estate of Christina Buchholz failed and refused to take action.

5. The rights of the plaintiff's have not been barred by the statute of limitations as the right of action did not accrue until after the probation of Frederick's will in December, 1944.

6. After deducting attorney's fees, the value of the life estate of Christina Buchholz in the property procured for her by Frederick, and after deducting all expenses of taxes, decoration and alterations in making the home comfortable for Christina, the balance of the award should be paid over by the executors of the estate of Frederick Buchholz to the executor of the estate of Christina Buchholz.